Hiram B. Thurber et al., Respondents, *v.* John M. Chambers et al., Impleaded, etc., Appellants.

The will of J. devised his real estate to his wife for life, remainder to H., an adopted son, "and his heirs." The words quoted were interlined. In another clause in the will he charges certain bequests upon "the estate hereby devised to" H.   H. died prior to the death of the testator. In an action for partition of the lands, *held*, that while the word "heirs" could be considered as "children," where from the whole will that appeared to have been the intent, there was no evidence here of such intent, and the word was, therefore, one of limitation, not of purchase;

that the devise lapsed and the children of H. had no interest in the land.

In the clause of the will giving bequests was a provision directing that W. should be maintained and provided for during life out of the testator's estate, and the estate devised to H. was "charged with the bequests" mentioned in said clause, and the same were declared "a mortgage on the estate" so devised.   By a subsequent clause, in case of the death of the testator's wife prior to his own death, his whole estate, real and personal, was given to H., subject to the payment of the legacies "and to the support and maintenance of the said" W.   *Held,* that the provision for the support of W. was a "bequest," and was a lien and charge upon the real estate devised to H.; and that, although the devise lapsed, the lien followed the remainder in the hands of the heirs of the testator.

Plaintiffs, at the request of W., and upon the faith and credit of the provision made for her in the will, supported her during her life.   *Held,* that it was to be presumed it was the intention of the parties that plaintiffs should have the benefits of the provision of the will, to which intent the court of equity would give effect, and that, therefore, a holding of an equitable assignment in favor of plaintiffs was proper.

*Thurber* v. *Chambers* (4 Hun, 721) modified as to costs.


(Argued April 7, 1876; decided April 18, 1876.)


APPEAL from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.   (Reported below, 4 Hun, 721.)

This action was for the partition of certain lands situate in St. Lawrence county.

On February 23, 1850, one-half of the premises in question was owned by Hiram B. B. Thurber, the other half by Kelsey T. Thurber.   The former was an adopted son of the latter, but not of his blood.   On the day mentioned said Kelsey T. Thurber executed his last will and testament containing the following clauses :

"First. I give and bequeath to my beloved wife Catherine, all the moneys and personal estate of which I may die· possessed, and authorize her, if she should survive me, to dispose of the same by will,

Second. I give and devise unto my said wife a life estate

in all the lands and tenements of which I may die seized, to be held and enjoyed, if she shall survive me, during her natural life.

Third. At the decease of my said wife, I give, devise and bequeath to my adopted son, Hiram B. B. Thurber, and his heirs, all the real estate of which I may die seized, so that at my wife's death he and his heirs shall be seized thereof in fee, but the same shall be subject to the conditions and bequest in the next section of this will mentioned.

Fourth. I give, devise and bequeath to my sister, Betsey Campbell, twenty-five dollars; to my sister, Polly Chambers, twenty-five dollars; to my brother, John K. Thurber, twenty-five dollars; to my nephew, Henry J. Pohlman, twenty-five dollars; to my neice, Eleanor, wife of Gates Pope, twenty-five dollars; to my neice, Catherine, wife of Josephus Bellinger, twenty-five dollars; to my nephew, William Pohlman, twenty-five dollars; to my niece, Eliza Breckenridge, twenty-five dollars; to be paid by the said Hiram Thurber within one year and six months after the decease of myself and wife, or the survivor of us. And I also will and direct that Elsie Whitney, an aged lady, who has resided with me for nearly forty years, shall be supported and maintained and provided for out of my estate during her natural life; and the estate hereby devised to Hiram B. B. Thurber is charged with the payment of the bequest mentioned in this section of this will, and the same are a mortgage on the estate so devised to said Hiram.

Fifth. If I should survive my wife, then I give, devise and bequeath all my estate, real and personal, to my said adopted son, Hiram B. Thurber, and his heirs, subject, however, to the payment of the legacies bequeathed in the fourth section of this will, and to the support and maintenance of the said Elsie Whitney."

Hiram B. B. Thurber died in 1851, leaving him surviving ten children, of whom plaintiff, Hiram B. Thurber, is one. The testator died in 1857, leaving surviving him his widow, Catherine, aged about eighty-five, and the said Elsie, named

in the will, aged about seventy-three.  His heirs at law were the descendants of four sisters, who are parties defendant to this action, as are also the other children of Hiram B. B. Thurber.  After the death of the testator, the said Catherine and Elsie, who were helpless and infirm, requested the plaintiff, Hiram, to support and take care of them, referring to the will as providing a means of payment for such support; a few days after, showing and allowing him to read those portions of the will in which provision was made.  Afterwards, and on or about the 22d day of April, 1859, said plaintiff undertook the support and care of said Catherine and also of Elsie, and continued their maintenance, care and support until the death of each; the said Elsie dying April 8, 1871, and the said Catherine, May 18, 1873.  The value of the support and care of said Elsie, as found, was $3,416.43.

The judgment of Special Term directed a sale of the premises.  The proceedings were not stayed upon appeal and the premises were sold, the half left by the testator realizing, over costs and expenses, the sum of $2,282.29.  Further facts appear in the opinion.

*B. H. Vary* for the appellants.  The charge for the support of Elsie Whitney did not attach to and become a lien upon the residuary estate.  (*Dodge* v. *Manning*, 11 Paige, 334; *Reynolds* v. *Reynolds*, 16 N. Y., 259; *Campporene* v. *Shuler*, 2 Paige, 122; *Chyrstie* v. *Phyp*, 19 N. Y., 344.)  There was no equitable assignment in favor of plaintiff.  (*Hoyt* v. *Story*, 3 Barb., 262; *Rogers* v. *Hosack*, 18 Wend., 319; *Dodge* v. *Wilbur*, 10 N. Y., 580.)  Plaintiff was not entitled to be subrogated in the place of Elsie Whitney.  (*Wilkes* v. *Harper*, 1 Comst., 586; *Sanford* v. *McClear*, 3 Paige, 122.)  If plaintiff has any claim it is against the estate of Elsie Whitney.  (*Temple* v. *Nelson*, 4 Metc., 584; *Wilkes* v. *Harper*, 1 Comst., 586.)  The devise to the adopted son of the testator lapsed by his death.  (3 Black. Com., 513; *Chrystie* v. *Phee*, 22 Barb., 195; *Campbell* v. *Rawdon*, 19 id., 499; *Bishop* v. *Bishop*, 4 Hill, 138; *Van Buren* v. *Dash*, 30 N.

Y., 393 ; 2 R. S., 66, § 52 ; *Weed* v. *Aldrich*, 9 N. Y. S. C. R., 531 ; *Livingston* v. *Green*, 52 N. Y., 118 ; *Moore* v. *Lyons*, 25 Wend., 119.)

*Edward C. James* for the respondents. The devise to the testator's adopted son did not lapse by the death of the latter. (*Taggart* v. *Murray*, 53 N. Y., 233 ; *Bundy* v. *Bundy*, 38 id., 410 ; *Moore* v. *Little*, 41 id., 66 ; *Campbell* v. *Rawdon*, 18 id., 412 ; *Cushman* v. *Horton*, 59 id., 149 ; *Sheridan* v. *House*, 4 Abb. Ct. App. Dec., 218 ; *Wild's Case*, 6 Coke, 17 ; *Oates* v. *Jackson*, 2 Str., 1172 ; *Ex parte Williams*, 1 J. & W., 91, note ; *Cook* v. *Cook*, 2 Vern., 545 ; *In re Sanders*, 4 Paige, 293 ; *Hannan* v. *Osborn*, id., 336 ; *O'Brien* v. *Heney*, 2 Edw. Ch., 242 ; *Roome* v. *Phillips*, 24 N. Y., 463 ; *Scott* v. *Guernsey*, 48 id., 106 ; *Hawn* v. *Banks*, 4 Edw. Ch., 664.) Plaintiff was entitled to payment for Elsie Whitney's support. (*Godard* v. *Pomeroy*, 36 Barb., 546 ; *Birdsall* v. *Hewlett*, 1 Paige, 32 ; *Hogeboom* v. *Hall*, 24 Wend., 146 ; *Chase* v. *Peck*, 21 N. Y., 581 ; *Stevens* v. *Cooper*, 1 J. Ch., 425 ; *Cheesebrough* v. *Millard*, id., 409 ; 1 H. & W. L. C. in Eq. [3d ed.], 152–156 ; 2 id., 230 ; *Matthews* v. *Aiken*, 1 N. Y., 595 ; *Carter* v. *Jones*, 5 Wend., 193 ; *Croft* v. *Poole*, 9 Watts, 451.)

Church, Ch. J. Neither of the three principal questions argued in this case is free from difficulty, and I have arrived at the conclusion to sustain the decision of the General Term with some hesitation and doubt. The question whether the devise to Hiram B. B. Thurber lapsed by reason of his death prior to that of the testator, depends upon whether the word " heirs " is to be construed as children. If not so construed it is a word of limitation, and the devise would lapse ; if so construed it is a word of purchase, and the children would take equally with the father ; and in that case the appellants, as heirs of the testator, would take no interest in the estate.

Prior to the Revised Statutes a devise to a person without adding the words, " and to his heirs," would only create a life estate ; and although those words are not now necessary to

create a fee, their use ordinarily only serves as a limitation to
vest the fee in the devisee.   The word *heirs* will, however, be
construed to mean *children* when, from the whole will, such
appears to have been the intention of the testator. (53 N. Y.,
233, 238 ; 38 id., 410.)   The interlineation by the person who
drew the will, of the words, "and his heirs," is relied upon as
evidence of such intent.   Although the use of them was
unnecessary to vest a fee, it is quite common, and the usual
way in deeds and conveyances to insert them for greater cer-
tainty, and their use, although intentional, as evidenced by
their being interlined, is very slight to indicate a design to
make a joint devise to Thurber and his children.   Indeed, it
might be inferred that if such was the intention of the inter-
lineation, language would have been used, of certain import,
to accomplish the purpose.   The circumstance that the tes-
tator did not change his will after the death of Hiram, if
competent upon this question, is very equivocal and not enti-
tled to much consideration.   Besides, in the will itself, in
charging the legacies, the testator charges them upon the
estate "hereby devised to Hiram B. B. Thurber," thus defining
the devise as an estate limited to him ; so that, to say the
least, the intention is not sufficiently indicated to justify the
construction that the heirs in this will means children.

The next question is, whether the support of Elsie Whitney
is charged in the will upon the remainder devised to Hiram.
The fourth clause of the will, after making several specific
legacies and directing that Elsie Whitney shall be supported
"out of my estate," declares, "and the estate hereby devised
to Hiram B. B. Thurber is charged with the payment of the
bequests mentioned in this section of this will, and the same
are a mortgage on the estate so devised to the said Hiram ;"
and by the next clause, in the event that the testator survives
his wife, the said legacies are charged upon the estate devised
to Hiram, and also, "the support and maintenance of the said
Elsie Whitney."

It is argued that the "bequests" which are charged in the
fourth clause were not intended to include the support of

Elsie Whitney, and that such support was charged generally upon his estate. Although the language indicates a distinction between "bequests" and the support of Miss Whitney, that is not decisive of the point, as unnecessary words are often used for greater certainty. It is quite evident that the testator intended to charge his estate with the support of Elsie Whitney, and, it is a reasonable inference, that he intended to charge his real estate. Upon the appellant's construction, the real estate would not be charged at all; and yet by the fifth clause it is expressly charged upon his whole estate. The provision for this old lady was a "bequest," and is legally embraced within the language used in the fourth clause; and unless a contrary intention is evinced in other parts of the will, the legal effect of the language must prevail. No such intention appears.

It is a general rule that provisions in a will intended for the support of the wife, will receive the most favorable construction to accomplish the purpose intended. The whole estate was given to the wife for life. It does not appear what the amount of the personal estate was; the farm consisted of 170 acres of land, an undivided half of which had been conveyed to Hiram by deed. It cannot be presumed that the testator intended to abstract from the income of a small farm, which common experience shows would afford but a scanty support for the widow, sufficient to support another person, who from age and infirmity was unable to render much assistance to others, or even to herself, and especially will this not be presumed against the legal effect of the language employed.

The plaintiff having occupied the premises and supported Miss Whitney, claims the benefit of the lien created by the will. Although the devise in favor of Hiram lapsed, the lien or charge for her support attached to, and followed, the remainder, devised to Hiram, in the hands of the heirs. (36 Barb., 546; 1 Paige, 32.) And if the plaintiff is entitled to the benefit of this lien it will absorb the avails of the property which has been sold. It is found that the plaintiff sup

ported Elsie Whitney upon the faith and credit of the pro-
visions made for her in the will.   The evidence is meager
upon this point, but I think it sufficient to sustain the finding.
It was proved that such support was furnished at the request
of the legatee, and the will was examined and referred to as
containing a provision for such support.   It is reasonable to
infer that the parties intended that the plaintiff should have
the benefit of the lien; and it is not indispensable to enable a
court of equity to carry out such intention that they should
have known and understood the precise legal effect of the
will or the lien.   It may be implied from the circumstances,
and what little transpired, that the design was to compensate
the plaintiff with the provision in the will.   They may not
have understood the legal character of that provision, nor that
the devise lapsed, but it is quite evident that the plaintiff was
to have the benefit of it; and equity will carry out that inten-
tion, although it may be necessary to do so in a different man-
ner from what was anticipated.   It is peculiarly the province
of equity to enforce the substantial rights of parties, and it
will construe the circumstances surrounding a transaction for
this purpose.

It was not necessary that the assignment should be in writ-
ing.   A parol assignment is equally effective; and if, from
what took place, an inference may be drawn that the parties
intended that the plaintiff should have the benefit of the pro-
vision in the will in any way, a court of equity will give
effect to the general intention by securing the plaintiff's right
in any legal way.   There is no pretence that any one else
rendered any support; the presumption is that Elsie had no
other means of support; the will was referred to as a reliance
for support, in connection with a request to plaintiff to ren-
der the support.   Under these circumstances I think the
court below was justified in holding an equitable assignment
in favor of the plaintiff.

The question of costs is raised by the appellants.   At the
Special Term one half of the costs was awarded against the
appellants, which was affirmed.   As the appellants have suc-

ceeded in establishing that the legacy lapsed, they were justified in making a defence to the title of the plaintiff, and as to the lien or charge in favor of Elsie Whitney and in contesting the amount of it, and they should have the costs out of the fund.

The judgment should be affirmed with the modification that the appellants, in this court, as well as the respondents, are to be allowed costs out of the fund reserved.

All concur.

Judgment accordingly.