AMERICAN SMELTING AND REFINING COMPANY, Plaintiff, *v.* ISIDORE M. STETTENHEIM, Defendant.

First Department, April 5, 1917.

Insurance — Insurance Law, section 65, construed — when payment by agent of commissions in excess of salary not a violation of the statute — word " such " construed.

The first clause of section 65 of the Insurance Law, prohibiting rebating and discriminations, forbids insured or agent to make any contract for insurance or agreement as to such contract other than as plainly expressed in the contract, and said clause is limited to insurance on property or risks limited within this State or against liability, casualty, accident or hazard that may arise or occur " therein," that is, within this State.

The words "such insurance," as used in said section, apply only to "insurance on property or risk located within this State or against liability, casualty, accident or hazard that may arise or occur therein."

Hence, said section does not prevent an insurance agent employed under a written contract by the terms of which he was to receive a certain salary, and agreed to apply thereon all commissions earned and to pay to his employers commissions in excess of his salary, from paying said excess commissions, where the insurance placed by him consisted of marine insurance, which is expressly excepted from the operation of the statute, and of industrial insurance at plants wholly outside this State.

The word " such " when used in a contract or statute must, in order to be intelligible, refer to some antecedent, and will generally be construed to refer to the last antecedent in the contract, unless some compelling reason appears why it should not be so construed.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Thomas D. Thacher,* for the plaintiff.

*Jeremiah T. Mahoney,* for the defendant.

SCOTT, J.:

The facts agreed to in this submission are succinctly and correctly stated in the plaintiff's brief as follows: The defendant was employed under a written agreement as an insurance agent to procure insurance and manage insurance matters in connection with marine insurance, employers' liability insurance, employees' pensions and workmen's collective benefits at plants owned by the American Smelters Securities Company and the plaintiff American Smelting and Refining Company. He was to receive a salary of $3,000 per year, but agreed to apply thereon all commissions earned on insurance placed pursuant to his employment, and also agreed to pay to his employers such commissions earned in excess of his salary except when to do so would be a violation of the rules of the New York Fire Insurance Exchange or other legal organizations of like character, or of the laws of the State where such insurance was effectual. This agreement bears date March 7, 1910, and the defendant's term of employment was to expire October 31, 1915. Contemporaneously a similar agreement was made between the defendant and trustees representing the plaintiff and other companies with respect to fire insurance, under which the defendant was to receive a salary of $17,000 per annum for a term of employment ending October 31, 1913. The trustees' agreement contained provisions similar to the agreement between plaintiff and defendant requiring the application of commissions in payment of salary and the payment of excess commissions by the defendant to the trustees.

On December 23, 1912, an agreement terminating both of these agreements was made, the plaintiff promising to pay the defendant his salary in full up to the expiration of his term of employment and a similar promise being made by the trustees. Thereafter, the trustees paid the defendant his salary and the defendant in turn paid to the trustees the amount of commissions earned pursuant to his employment under the trustees' agreement, but the defendant has refused to pay the plaintiff commissions in excess of his salary earned under his contract

of employment with it, claiming that to do so would be a violation of section 65 of the Insurance Law of the State of New York.

It is stipulated that the commissions earned by the defendant exceeded the amount of his salary payable to the expiration date of the contract by $7,171.28; and the sole question to be decided by this court is whether or not the payment of this amount pursuant to the agreements of the parties is prohibited by section 65 of the Insurance Law.

The case and submission also contains the following:

" 8. The insurance placed by said Stettenheim under said contract consisted of marine insurance on property partly within and partly without the State of New York, and of employers' liability insurance, employees' pensions and workmen's collection benefits at plants of the American Smelting and Refining Company which were wholly without the State of New York.

" 9. The application of the commissions earned by said Stettenheim in payment of his said salary of $3,000 per year and the payment of the commissions earned by him in excess of said sum were not in violation of the rules of the New York Fire Exchange or of the laws of the State where such insurance was effectual, or of any local organizations similar in character to the New York Fire Exchange in such States where such insurance was placed, except and unless such application and payment may have been in violation of section 65 of the Insurance Laws of the State of New York."

Section 65 was originally added to the Insurance Law (Consol. Laws, chap. 28; Laws of 1909, chap. 33) by chapter 416 of the Laws of 1911. It has twice been amended (Laws of 1912, chap. 225; Laws of 1913, chap. 25), but the amendments do not affect the question now to be considered. In so far as the section affects that question it reads as follows:

" § 65. Rebating and discriminations prohibited. No insurance corporation, association, partnership, Lloyds or individual underwriters authorized or permitted to do any insurance business within this State, or any officer, agent, solicitor or representative thereof, shall make any contract for such insurance, *on property or risk located within this State, or against liability, casualty, accident or hazard that may arise or occur*

*therein* or agreement as to such contract, other than as plainly expressed in the policy issued or to be issued thereon; nor shall any such corporation, association, partnership, Lloyds or individual underwriters, or officer, agent, solicitor or representative thereof, directly or indirectly, in any manner whatsoever, pay or allow or offer to pay or allow as inducement to *such insurance*, or after the insurance shall have been effected, any rebate from the premium which is specified in the policy or any special favor or advantage in the dividends or other benefit to accrue thereon, or any valuable consideration or inducement whatever, not specified in the policy or contract of insurance, or give, sell or purchase, or offer to give, sell or purchase, as inducement to such insurance, or in connection therewith, any stock, bonds or other securities of any insurance company, or other corporation or association, or any dividends or profits accrued thereon, or anything of value whatsoever, not specified in the policy, nor shall any insurance broker, his agent or representative, or any other person, directly or indirectly, either by sharing commissions or in any manner whatsoever pay or allow or offer to pay or allow as inducement to *such insurance,* or after the insurance shall have been effected, any rebate from the premium which is specified in the policy; nor shall the insured, his agent or representative, directly or indirectly accept or knowingly receive any such rebate from the premium specified in the policy. * * * This section shall not apply to any contract of life insurance nor to any contract of insurance upon or in connection with marine or transportation risks or hazards other than contracts for automobile insurance, nor to contracts made by persons, associations or corporations authorized to do business under articles five,* seven and nine of this chapter."

Reduced to its simplest terms, the question involved is whether the words "such insurance," as used throughout the portion of the section above quoted, applies only to "insurance on property or risk located within this State, or against liability, casualty, accident or hazard that may arise or occur therein," or whether the words "such insurance" should be construed only to designate the kind of insurance as to which

---

* The word "six" was omitted in 1913.— [REP.

rebating is prohibited without regard to the location of the risk or property insured, or the place at which the loss may occur.

The former construction is contended for by the plaintiff, the latter by the defendant.

The first consideration to be observed is that the portion of the section applicable to the question at issue is contained in a single sentence, and that it is designed to prevent a single practice, to wit, rebating or its equivalent either by an insurer or by a broker. It would be a natural conclusion, therefore, that the whole clause was intended to apply to the same subject-matter, and that wherever the word "such" is used it should be construed as referring back to a common subject-matter.

The word "such" when used in a contract or statute must, in order to be intelligible, refer to some antecedent, and will generally be construed to refer to the last antecedent in the context, unless some compelling reason appears why it should not be so construed. The first clause in the section quoted forbids any insurer or agent to make any contract for insurance or agreement as to such contract other than as plainly expressed in the contract. This clause clearly and beyond question is limited to insurance on property or risk located within this State, or against liability, casualty, accident or hazard that may arise or occur "therein," *i. e.*, within this State. These words of limitation serve to indicate not only the kind of insurance to which the first clause was intended to apply, but also to the kind of insurance with which the Legislature intended to deal. These words furnish a perfect antecedent for the words "such insurance" as written into the subsequent clauses of the same sentence. So construed the sentence deals completely and comprehensively with the subject-matter of the legislation.

The defendant would have us divide the sentence into four independent and unrelated clauses, one dealing with the inclusion of all agreements in the insurance contract; another forbidding rebating by the insurer; still another forbidding rebating by a broker, and the fourth forbidding the acceptance of rebates by the assured. To this it may be replied that if the Legislature had intended to enact the section in this form it could easily have done so, and the fact that it has not done so is

an indication that it did not intend to do so.  But even if we so divide the section the question as to what was meant by the term " such insurance " would still survive, and the words of limitation in the first clause would still remain the last antecedent in the context and would naturally serve to qualify and define the words " such insurance " in the later clauses.

As it is stipulated that the insurance placed by defendant consisted either of marine insurance which is expressly excepted from the operation of the section, or of industrial insurance at plants of plaintiff wholly outside the State of New York, we are of the opinion that section 65 of the Insurance Law interposes no legal obstacle to the fulfillment by defendant of the contracts embodied in the submission.

There must, therefore, be judgment for the plaintiff as prayed for, but under the terms of the submission without costs.

CLARKE, P. J., LAUGHLIN, DAVIS and SHEARN, JJ., concurred.

Judgment ordered for plaintiff, without costs.  Order to be settled on notice.